2019 IL App (1st) 181593-U

FIRST DIVISION
November 12, 2019

No. 1-18-1593

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MARY SHANNON, as Successor Executor of the Estate of Eileen A. O'Malley, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) ) | Cook County |
| v. | ) ) | No. 14 L 5249 |
| DESMOND & AHERN; HUGH AHERN; and JOHN AHERN, | ) ) ) ) | The Honorable Brigid M. McGrath Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE PIERCE delivered the judgment of the court.
Justices Connors and Walker concurred in the judgment.

ORDER

¶ 1   *Held*: The circuit court's entry of summary judgment in favor of defendants is reversed, and we remand for further proceedings. The first accounting malpractice claims asserted by the estate related back to the timely-filed accounting malpractice claims filed by individual beneficiaries of the estate, and therefore the estate's claims were not barred by the statute of limitations.

¶ 2                    I. BACKGROUND

¶ 3   The history of the litigation between the parties is important to the understanding of the

issues on appeal. On June 15, 2009, the will of Eileen A. O'Malley (Mrs. O'Malley) was

admitted to probate. Marquette Bank was appointed independent executor of Mrs. O'Malley's estate. On November 5, 2009, a petition was filed in the probate court challenging Mrs. O'Malley's will and a related trust. In February 2011, the probate court terminated Marquette Bank's independent administration of Mrs. O'Malley's estate. In March 2012, the probate court—after a jury trial on whether Mrs. O'Malley's will was the result of undue influence—vacated its order admitting Mrs. O'Malley's will to probate. In August 2012, Mary Shannon was appointed special administrator of Mrs. O'Malley's estate for the limited purpose of prosecuting two pending lawsuits against defendants Desmond & Ahern, Hugh Ahern, and John Ahern in the law division. In November 2013, Mary Shannon was appointed successor executor of Mrs. O'Malley's estate.

¶ 4      Relevant to the limitations issue in this appeal, in September 2009, Marquette Bank hired defendants to prepare Mrs. O'Malley's 2008 individual tax return, the estate's tax return, and any related gift tax returns. Copies of the proposed tax returns were circulated to attorneys for members of Mrs. O'Malley's family. An attorney representing a number of Mrs. O'Malley's children notified Marquette Bank that there were at least 29 issues that needed to be addressed before filing Mrs. O'Malley's estate tax return. Marquette Bank took no action in response and filed the returns as prepared by defendants in May 2010.

¶ 5      While the will contest was being litigated in the probate court, two separate groups of Mrs. O'Malley's heirs sued defendants in case no. 11 L 10734 and no. 11 L 10760 for alleged errors in the preparation of Mrs. O'Malley's tax returns. In September 2012, Mary Shannon, as special administrator of Mrs. O'Malley's estate, joined as a party plaintiff in case no. 11 L 10760, under the authority of the August 2012 order. In February 2013, the individual plaintiffs were dismissed from case no. 11 L 10760, leaving the estate as the only named plaintiff. In

March 2013, the circuit court dismissed the estate's claims in case no. 11 L 10760 without prejudice.

¶ 6    On May 15, 2013, case no. 11 L 10760 and case no. 11 L 10734 were consolidated. In case no. 11 L 10734, several of Mrs. O'Malley's heirs sued defendants for aiding and abetting Marquette Bank's breach of its fiduciary duties to Mrs. O'Malley's estate and its beneficiaries.[1] Also on May 15, 2013, the special administrator was allowed to file a third amended complaint, and was then allowed to voluntary dismiss casno. 11 L 10734.

¶ 7    On May 15, 2014, Mary Shannon, as successor executor, refiled the consolidated action in this case, no. 14 L 5249. Attached to the refiled complaint is an affidavit of William O'Malley, one of Mrs. O'Malley's children, wherein he admits that he and others sought to assist in a scheme to defraud Mrs. O'Malley, deplete her assets, and to deplete the plaintiffs' inheritances. The circuit court stayed the case because of related federal tax court litigation. The circuit court ultimately granted summary judgment in favor of defendants, finding that plaintiff's claims against defendants were barred by the two-year statute of limitations applicable to accounting malpractice claims.

¶ 8    On appeal, plaintiff argues that the circuit court erred by entering summary judgment in favor of defendants because the estate's claims were timely. Distilled down to its essence, this appeal involves the following issue: whether the accounting malpractice claims asserted by the estate when it was added as a party plaintiff to the 2011 lawsuit in September 2012 relate back to the initial claims for accounting malpractice asserted by the beneficiaries when the 2011 lawsuit was first filed. For the reasons that follow, we find that it does. Accordingly, we reverse the

---

[1]Because the two complaints were ultimately consolidated, we refer to those complaints below as the 2011 lawsuit.

circuit court's entry of summary judgment in favor of defendants, and remand for further proceedings.

¶ 9                                    II. THIS LITIGATION

¶ 10    The individual plaintiffs alleged in case no. 11 L 10734, in relevant part, that in September 2009, Marquette Bank engaged defendants to prepare Mrs. O'Malley's individual tax return and estate tax return (estate tax return). In October 2009, some of the children, "in order to protect their rights and the rights of the estate," wrote a letter requesting that Marquette Bank investigate and file a claim for theft loss from Mrs. O'Malley's personal assets, and included a proposed individual tax return for Mrs. O'Malley reflecting the theft loss. Marquette Bank discussed the letter with defendants, but neither Marquette Bank nor defendants made any adjustments to Mrs. O'Malley's 2008 individual tax return. Defendants knew that (1) certain estate assets were improperly valued, (2) millions of dollars were missing from the estate, (3) no investigation had been done into the missing assets, and (4) "[n]otes due to the O'Malley estate were [v]alued or [c]alculated by 'Winging It.' " On May 26, 2010, Marquette Bank filed the estate tax return that was prepared and submitted by defendants.

¶ 11    Further, the plaintiffs asserted two counts of professional negligence: negligent preparation of Mrs. O'Malley's individual tax return (count I), and negligent preparation of Mrs. O'Malley's estate tax return (count II). Relevant to the issues on appeal, the plaintiffs alleged in count II that defendants owed duties to Mrs. O'Malley's estate and the estate's beneficiaries by failing to (1) investigate and value the estate's assets, (2) obtain information about the estate's assets and liabilities, (3) investigate the estate's property, (4) properly investigate the gift tax return (gift tax return), and (5) prepare an accurate estate tax return.

¶ 12    On July 19, 2012, numerous beneficiaries of Mrs. O'Malley's estate filed a one-count first amended complaint in case no. 11 L 10734, asserting that defendants had aided and abetted Marquette Bank's breach of fiduciary duties to the estate and to the estate's beneficiaries. On July 24, 2012, a three-count first amended complaint was filed in case no. 11 L 10760, asserting that defendants aided and abetted Marquette Bank's breach of fiduciary duties (count I) to the estate, and repleading counts I and II as counts II and III, respectively. The factual allegations in both amended complaints were similar to those of the initial complaints.

¶ 13    Defendants moved to dismiss the amended complaints. The plaintiffs did not respond to the motions to dismiss. In case no. 11 L 10760, the plaintiffs moved to amend and to consolidate with case no. 11 L 10734. The basis of their motion to amend was that the probate court had appointed Mary as the special administrator of Mrs. O'Malley's estate for the limited purpose of prosecuting case nos. 11 L 10734 and 11 L 10760. The circuit court granted the plaintiffs leave to file a second amended complaint adding Mary, as special administrator of Mrs. O'Malley's estate, as a party plaintiff, but did not rule on the motion to consolidate.

¶ 14    On September 27, 2012, the individual plaintiffs and Mary, as special administrator of Mrs. O'Malley's estate, filed a second amended complaint against defendants in case no. 11 L 10760 alleging facts similar to those previously alleged, and asserting the same three counts alleged previously: aiding and abetting Marquette Bank's breach of its fiduciary duties, negligence with respect to Mrs. O'Malley's 2008 individual tax return, and negligence with respect to the estate tax and gift tax returns. The circuit court granted defendants' combined motion to dismiss the second amended complaint in its entirety pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)) without prejudice.

¶ 15    On May 15, 2013, over defendants' objection, the circuit court granted the plaintiffs leave to file a third amended complaint—which asserted the same three claims as the second amended complaint—granted plaintiffs' motion to consolidate case nos. 11 L 10734 and 11 L 10760, and granted plaintiffs' oral motion for a voluntary dismissal of the 2011 lawsuit.

¶ 16    On May 15, 2014—one year after the voluntary dismissal of the 2011 lawsuit—plaintiff, as executor of the O'Malley estate, filed a two-count complaint against defendants for professional negligence and aiding and abetting Marquette Bank's breach of its fiduciary duties to the estate. The allegations in the refiled complaint were virtually identical to the allegations in the voluntarily dismissed 2011 lawsuit. Relevant to the limitations period at issue in this appeal, plaintiff alleged that some of the estate's beneficiaries informed Marquette Bank in a May 20, 2010, letter that the estate tax return was "misleading, incomplete, and inadequate," and itemized 29 issues with the proposed return. Plaintiff further alleged that defendants were aware of the May 20, 2010, letter, but filed the proposed return without making any changes. The IRS conducted an audit, resulting in over $4 million in penalties. Plaintiff also alleged that defendants conducted no investigation into the alleged theft loss of over $28 million in real estate proceeds, "despite having evidence of theft, collusion, and fraud." Count I asserted that defendants failed to properly investigate and prepare Mrs. O'Malley's 2008 individual tax return and the estate tax return by failing to (1) investigate or make a reasonable inquiry into a possible theft loss in preparing Mrs. O'Malley's individual tax return; (2) prepare Mrs. O'Malley's individual tax return to include a theft loss; (3) adequately investigate and value the assets in Mrs. O'Malley's estate; (4) obtain accurate information regarding, or make a reasonable investigation into, the assets and liabilities in Mrs. O'Malley's estate; (5) make a reasonable investigation into a gift tax return and properly amend the gift tax return; and (6) prepare the estate tax return.

¶ 17   On defendants' motion, the circuit court dismissed all claims regarding Mrs. O'Malley's individual tax return with prejudice, and dismissed the claims pertaining to the estate tax return without prejudice.

¶ 18   Plaintiff, as Executor, filed an amended complaint, which is the operative complaint on appeal, removing any allegations regarding Mrs. O'Malley's individual tax return and all allegations regarding a theft loss. Count I alleged that defendants were negligent in preparing and filing the estate tax return based in part on the defendants knowledge of the May 20, 2010, letter sent to Marquette Bank showing 29 itemized issues with the proposed return and claiming that the estate tax return was "misleading, incomplete, and inadequate;" that defendants were aware of the May 20, letter, but filed the proposed return without making any changes; and that defendants made 30 specific errors in preparing the estate's tax return that proximately caused the IRS's $11.6 million deficiency notice and assessment of nearly $2.8 million in penalties. Count II alleged that defendants made 13 specific errors in preparing the gift tax returns for the 2008 and 2009 tax years, resulting in an IRS Notice of Deficiency of $1.4 million in unpaid taxes and over $600,000 in penalties for inaccurate reporting and failing to timely file the returns and pay the taxes owed.

¶ 19   Defendants moved for summary judgment on the amended complaint. Relevant to the issues on appeal, defendants argued that the estate's accounting malpractice claims were time barred because the estate's beneficiaries had actual notice of the alleged accounting errors based on the letter those beneficiaries sent to the trustee Marquette Bank in May 2010. Defendants argued that the estate did not assert any claims of professional negligence against defendants in the 2011 lawsuit until September 2012. Defendants contended that the estate's claims in the refiled complaint did not relate back to the filing of the 2011 lawsuit under section 2-616(b) of

the Code (735 ILCS 5/2-616(b) (West 2014)) because the 2011 lawsuit was filed by beneficiaries of the estate, not the estate itself, and involved different injuries and alleged errors. After briefing and a hearing, the circuit court denied defendants' motion for summary judgment.

¶ 20    Defendants moved for reconsideration, arguing that the circuit court erred by rejecting their statute of limitations argument. Defendants also argued that, in prior pleadings, the estate alleged it was injured by defendants' alleged conduct in the form of fees it paid to defendants and fees it incurred as a result of the federal tax court litigation. After briefing and a hearing, the circuit court entered a handwritten order granting defendants' motion to reconsider and entering summary judgment in favor of defendants "for the reasons stated on the record." The circuit court found that the estate had knowledge of a wrongfully caused injury in May 2010, specifically the "professional fees and the professional fees they incurred investigating it." The circuit court also stated that the professional negligence claims in the amended complaint did not relate back to any claims in the 2011 lawsuit.

¶ 21    The circuit court denied plaintiff's motion to reconsider the order granting summary judgment in favor of defendants. Plaintiff filed a timely notice of appeal.

¶ 22                                    III. ANALYSIS

¶ 23    On appeal, plaintiff argues that the 2011 lawsuit was filed within the two-year limitations period applicable to accounting malpractice claims, and therefore the refiled action—filed within one year of the voluntary dismissal of the 2011 lawsuit—is not barred by the statute of limitations. Plaintiff argues that the relation-back doctrine does not apply to refiled actions, but that even if it did, the claims in this refiled action arose out of the same transaction or occurrence set up in the 2011 lawsuit. In response, defendants argue that when the estate became a party to

8

the 2011 lawsuit in September 2012, more than two years had elapsed since May 2010, when the estate knew of defendants' alleged negligence and suffered its alleged injuries.

¶ 24    Summary judgment is appropriate if the pleadings, depositions, affidavits, and other admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review a circuit court's ruling on summary judgment *de novo* (*Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15), and we review the circuit court's judgment, not its reasoning (*Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995)).

¶ 25    We first briefly address the parties' statute of limitations arguments. Section 13-214.2(a) of the Code provides

> "Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended, or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 2010).

¶ 26    "A cause of action 'accrues' when facts exist that authorize the bringing of a cause of action. Thus, a tort cause of action accrues when all its elements are present, i.e., duty, breach, and resulting injury or damage." *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. Section 13-214.2(a) embodies the discovery rule, "postponing the start of the limitations period until

plaintiff knows or reasonably should know that he was injured, and that his injury was wrongfully caused." *Lane v. Deutsche Bank, AG*, 2015 IL App (1st) 142968, ¶ 18 (citing *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672-73 (1997)).

¶ 27    The parties disagree as to when the statute of limitations began to accrue on the estate's accounting malpractice claims against defendants. Plaintiff relies on our supreme court's decision in *Kahn*, 2012 IL 112219, to argue that the statute of limitations began to accrue on May 21, 2013, when the IRS issued a notice of deficiency, and therefore the refiled action was commenced within the two-year statute of limitations. Defendants respond that the statute of limitations began to accrue on May 20, 2010, when the beneficiaries of Mrs. O'Malley's estate sent Marquette Bank, in its capacity as executor for Mrs. O'Malley's estate, a letter regarding the estate tax return, because the estate was put on notice of defendants' alleged negligence, and the estate suffered an injury in the form of professional fees that it paid to defendants.

¶ 28    We need not determine the precise date on which the estate suffered an actionable injury. Regardless of whether the statute of limitations began to run in May 2010 or May 2013, we find that the estate's professional negligence claims against defendants for their preparation and filing of the estate tax and gift returns were timely where the initial 2011 lawsuits—filed in May 2011—asserted the same claim and injury to both the estate and its beneficiaries. When the estate was added as a party plaintiff in September 2012, its claim related back to the essentially identical claims that were timely filed in May 2011. Defendants do not complain about the timeliness of the May 15, 2014, refiling, and defendants do not raise any argument as to whether the claims in the operative complaint arise out of the same occurrence or transaction set up in the 2011 lawsuit. Defendant's sole argument is that when the estate was added as a party in September 2012, its claims were already untimely and did not relate back to the individual

beneficiaries' claims in the initial complaints. We find that the estate's claim arose out of the same occurrence or transaction set up in the timely filed initial complaints in the 2011 lawsuit. Therefore, the accounting malpractice claim advanced in this refiled action is not time barred. The circuit court erred by entering summary judgment in favor of defendants.

¶ 29     Section 2-616(b) of the Code provides

> "The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." 735 ILCS 5/2-616(b) (West 2016).

¶ 30     As our supreme court has explained,

> "[S]ection 2-616(b) of the Code permits an amended pleading filed after the expiration of the limitations period to relate back to the filing of the original

11

complaint if two requirements are met: (1) the original pleading was timely filed and (2) the original and amended pleadings indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 21.

¶ 31   "A liberal construction of the requirements of section 2-616(b) is necessary 'to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.' " *Id.* (quoting *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102 (1995)). "The purpose of the statute is to preserve causes of action against loss by reason of technical default unrelated to the merits." *Id.* (citing *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 355 (2008)).

¶ 32   We find that the estate's professional negligence claims in the second amended complaint in the 2011 lawsuit related back to the professional negligence claims set up in the beneficiaries' initial 2011 complaints, and that the estate's professional negligence claims were timely. Even if we assume that the statute of limitations on the estate's accounting malpractice claims premised on defendants' alleged negligent preparation of the estate tax and gift tax returns began to run in May 2010, the consolidated 2011 lawsuits were filed within the two-year statute of limitations applicable to accounting malpractice claims. The initial complaints in the 2011 lawsuit alleged that defendants were negligent by failing to properly prepare Mrs. O'Malley's estate tax and gift tax returns, thereby breaching defendants' duties to the estate and the beneficiaries. See *supra* ¶¶ 9-10. In September 2012, Mary, in her capacity as special administrator of Mrs. O'Malley's estate, was substituted as a party plaintiff in the 2011 lawsuit, asserting a claim against defendants for professional negligence with respect to the preparation of Mrs. O'Malley's estate

tax and gift tax returns.[2] By asserting that the beneficiaries were injured as a result of the defendants' alleged negligent preparation and filing of the estate's tax returns, the beneficiaries implicitly and explicitly alleged that the estate itself was also injured by defendants' negligence, and that the injuries were identical. The initial complaints were timely filed in 2011, satisfying the first requirement for relation back, and the professional negligence claims in the later filed amended complaints arose out of the same transaction or occurrence set up in the original pleading—the preparation of the estate tax and gift tax returns—satisfying the second requirement for relation back. See *Lawler*, 2017 IL 120745, ¶ 21.

¶ 33    Defendants argue on appeal that the estate's claims were never timely because the "[t]he Estate's injury is entirely distinct from that of the individual beneficiaries," but defendants make no effort to explain how the beneficiaries' alleged injuries are different from the alleged injury to the estate. Defendants cite *Pirrello v. Maryville Academy, Inc.*, 2014 IL App (1st) 133964 to argue that relation back does not apply when an amended pleading adds a new party's claims for injuries that were not alleged in the timely-filed pleading. *Pirrello* is distinguishable from the case before us.

¶ 34    In *Pirrello*, the plaintiff, Brandy, who had reached her majority, sued the defendant to recover for injuries she sustained after jumping out of a window of a facility operated by the defendant while she was a minor. *Id.* ¶ 3. Brandy alleged specific negligent acts (*id.*), timely filed her personal injury claims, and also alleged that she "had incurred hospital, medical and related expenses, but [her complaint] contained no claim under the [Family Expense Act (Act) (750 ILCS 65/15(a)(1) (West 2008))] for expenses incurred prior to the time [she] turned 18." *Pirrello*, 2014 IL App (1st) 133964, ¶ 4. Brandy amended her claims twice, but never asserted

---

[2]Defendants did not object to the special administrator being substituted in as a party plaintiff, and at no point in the 2011 lawsuit did defendants argue that the estate's accounting malpractice claims were time-barred.

any claim under the Act. *Id.* The defendant moved for partial summary judgment, arguing that Brandy "was not entitled to recover medical or other related expenses incurred from the date of the accident until she turned 18." *Id.* ¶ 5. It was undisputed that Brandy's father had not assigned any of his claims under the Act to Brandy. *Id.* ¶ 7. Brandy sought leave to amend her complaint to add her father as a plaintiff to assert his claim under the Act. *Id.* The circuit court granted the defendant's motion for partial summary judgment, finding that Brandy was not entitled to recover medical or other related expenses incurred from the date of the accident until she turned 18 because any such claim was time-barred, and denied Brandy leave to amend her complaint. *Id.* ¶ 8. On appeal, we affirmed the circuit court's judgment, finding that Brandy's

> "reliance on the relation-back doctrine would make sense if, for example, her father had in fact assigned his claim under the Act to her, but she failed to allege the existence of the assignment until after the expiration of the statute of limitations. Under such circumstances, [Brandy's] proposed third amended complaint would cure a defect in her original pleading by including allegations relating to the assignment, a necessary condition precedent to her right to recover medical expenses incurred while she was a minor. But what [Brandy] proposed to do here was add her father as a party-plaintiff so that he could assert a claim under the Act on his own behalf—a claim that was untimely. Applying the relation-back doctrine in this case would have the effect of reviving a time-barred claim that has never been owned by the only party-plaintiff and was never timely asserted by the claim's owner." *Id.* ¶ 20.

¶ 35    In *Pirrello*, Brandy's initial and amended complaints sought recovery for her personal injury claims, but did not assert claims under the Act for expenses incurred before she turned 18. As the *Pirrello* court observed,

> " 'The common law in turn gives parents a cause of action against a tortfeasor who, by injuring their child, caused them to incur the medical expenses.' [Citations.] Such a claim is not a claim for damages as a result of the child's personal injury, but is founded on the parents' liability for the child's medical expenses under the Act. [Citation.] The cause of action belongs to the parents, and if the parents are not entitled to recover, neither is the child. [Citation.]" *Id.* ¶ 12.

¶ 36    In other words, the father in *Pirrello* was injured when he became obligated to pay his daughter's medical expenses, not when his daughter was injured (*id.* ¶ 19), and his injury—the obligation to pay his daughter's medical expenses—did not arise out of the same occurrence giving rise to Brandy's personal injury claims: defendant's alleged negligence in failing to assess Brandy's propensity for self-harming behavior and take precautions to protect her.

¶ 37    Here, the beneficiaries timely asserted in the 2011 lawsuit that they and the estate were injured by defendants' negligent conduct in the preparation and filing of the estate and gift tax returns. At all times, the individual beneficiaries' claims sought to hold defendants liable for the injuries that defendants' alleged negligence caused to the estate. It is evident that the injuries alleged in every complaint and amended complaint in the 2011 lawsuit arose out of the same transaction or occurrence. When the estate became a party plaintiff in the 2011 lawsuit, the estate's negligence allegations and resultant damages asserted against defendants related to the estate and gift tax returns, were identical to the claims asserted in the initial complaints, and

15

sought recovery for essentially the same injury. We therefore find that when the estate was added as a party plaintiff in September 2012—after the probate court removed Marquette Bank and appointed Mary as special administrator for the purpose of prosecuting the 2011 lawsuit—the estate's claims as alleged in the second amended complaint in the 2011 lawsuit relate back to the timely-filed claims in the 2011 lawsuit.

¶ 38    Having found that the special administrator's claims in the second amended complaint in the 2011 lawsuit were timely, we find that the estate's accounting malpractice claim in the refiled action is also timely. When the estate voluntarily dismissed its third amended complaint alleging accounting malpractice claim premised on the negligent preparation and filing of the estate tax and gift tax returns, the estate had one year to refile that claim. 735 ILCS 5/13-217 (West 1994). There is no dispute that the estate timely refiled its claim within one year of the voluntarily dismissal. And on appeal, defendants do not argue that the accounting malpractice claim in the refiled lawsuit does not arise out of the same transaction or occurrence set up in the complaint and amended complaints in the 2011 lawsuit. Any such argument would fail, since the claim in the refiled action asserts that defendants were negligent in preparing and filing the estate tax and gift tax returns, which is the same transaction or occurrence that was set up in the initial complaints in the 2011 lawsuit.

¶ 39    Finally, defendants do not advance any arguments on appeal that the record supports any alternative basis for affirming the circuit court's entry of summary judgment in defendants' favor. Defendants have therefore forfeited any such arguments. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited[.]").

¶ 40                                    IV. CONCLUSION

¶ 41    For the foregoing reasons, the circuit court's entry of summary judgment in favor of defendants based on the statute of limitations is reversed, and we remand to the circuit court for further proceedings.

¶ 42    Reversed and remanded.